Stantex Petroleum Company, as Alleged Trustee for Lillie Morse Syndicate No. 2, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Stantex Petroleum Company, as Alleged Trustee for Lillie Morse Syndicate No. 1, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 89531, 89532.   Promulgated August 5, 1938.

*Dwight Williams*, Esq., and *Tom F. Carey*, C. P. A., for the petitioners.

*S. B. Anderson*, Esq., for the respondent.

OPINION.

Disney: These proceedings were consolidated for hearing and report and involve redetermination of the following deficiencies:

| Period | Tax | Docket No. 89531 | | Docket No. 89532 | |
|---|---|---|---|---|---|
| | | Deficiency | Penalty | Deficiency | Penalty |
| 1932 | Income | $98.75 | $24.69 | $421.29 | $105.32 |
| 1933 | do | | | 106.58 | 26.64 |
| Do | Excess profits | | | 38.76 | 9.69 |
| 1/1/34 to 2/28/34 | Income | 9.15 | 2.29 | | |
| Do | Excess profits | 3.83 | .83 | | |
| 1/1/34 to 4/30/34 | Income | | | 58.62 | 14.66 |
| Do | Excess profits | | | 21.31 | 5.32 |

The question presented for decision is whether the petitioners are associations taxable as corporations. The facts are embodied in stipulations of fact which are adopted by reference as our findings of fact.

Immediately after its organization in 1931 under the laws of Oklahoma the Stantex Petroleum Co. acquired by assignment, in exchange for 130 shares of its capital stock, an oil and gas lease covering a tract of land in Texas. Thereafter in 1931 the Stantex Petroleum Co. sold to 30 individuals undivided interests aggregating

260/640 of its 7/8 working interest in the lease covering the north half of the tract, and, to 19 persons, undivided interests totaling 87/640 of its 7/8 working interest in the lease covering the south half of the land. Each purchaser acquired his undivided interest under the provisions of a written assignment reading, in part, as follows:

To Have and to Hold said interest unto said assignee, his or her executors, administrators and assigns, subject, however, to the agreements and powers hereinafter recited, which are agreed to by said assignee by acceptance of this assignment.

And for the same consideration, the assignor covenants for itself, its successors and assigns, to and with said assignee, his or her executors, administrators and assigns, that the assignor is the lawful owner of the interest herein assigned and has good right to assign the same.

Assignor further covenants that it will drill, at its own expense, a well on the above described premises to a depth of thirty-seven hundred (3,700) feet, unless oil or gas is found in paying quantities at a lesser depth and if production is obtained in paying quantities, the assignor agrees to furnish the necessary tankage at its own expense.

In the event of discovery of oil and/or gas on the leased premises in paying quantities, the assignee herein authorizes the assignor to collect the proceeds due under this lease from all oil and/or gas sold to any pipe line, refinery or other purchaser of said products, giving said assignor authority to collect and receipt for the same and to pay out, first the expense of operating, producing, saving and marketing said oil and/or gas as certified by the Stantex Petroleum Company, the operators of said lease and to pay the net proceeds to the leaseholders as their interests appear. Said assignee further agrees that the Stantex Petroleum Company for rendering this service of collecting and distributing the funds as above outlined shall receive one (1%) percent of said funds or a minimum of One Hundred Fifty ($150.00) Dollars per month, as a compensation therefor. Said assignee further agrees in accepting this assignment that when the holders of 51% or more of the interests in said lease, desire to sell and have a purchaser in good faith ready, willing and able to buy the entire property, that he or she agrees to join in said sale or to buy the other interests out at the price that they have agreed to sell for. Said assignee agrees either to join in said sale or purchase under the above agreement within fifteen days after he receives notice that 51% of the interest holders desire to sell and if he fails to either buy or join in said sale within fifteen days, the said assignee hereby appoints and makes said assignor his or her attorney in fact to execute and assign his or her interest in said lease as fully as though he or she had executed it, and assignee hereby ratifies such sale and all acts of such attorney in fact in carrying out said agreement.

It is further agreed that Stantex Petroleum Company, its successors and assigns shall have the development and operation of said premises so leased as long as said development and operations are conducted in an efficient manner.

It is further agreed that Stantex Petroleum Company, its successors and assigns shall have the right to contract for the sale of all the oil and/or gas produced to the interest herein assigned from the property above described and shall have the right to execute in behalf of and as the agent for the assignee

named herein division orders and such other instruments and/or contract as may become necessary for the sale and marketing of said oil and/or gas.

This assignment becomes valid and effective only upon signing and acknowledging of the same by both assignor and assignee.

All of the assignments were properly recorded in Rush County, Texas.

No other agreements were ever entered into between the assignor and the assignees regarding the respective undivided interests in the lease, and aside from the assignments, no certificate or acknowledgment of interest was ever issued to the assignees. During the taxable periods in question the Stantex Petroleum Co. did not hold legal title to the undivided interests covered by the assignments.

The alleged association had no name, no office, no stationery, no books of record, no bylaws, no trust agreement, no officers, no board of directors, and it did not issue certificates of beneficial interest.

Pursuant to the terms of the assignments and during 1931, the Stantex Petroleum Co. drilled, completed, and equipped a producing oil and gas well on each half of the tract, the well on the north half being known as "Lillie Morse Well No. 1" and the one on the south half as "Lillie Morse Well No. 2."

The Stantex Petroleum Co. complied with the terms of said assignments (Exhibit A), in that it signed division orders as agent for the owners of said 260/640 undivided interests, sold the oil and gas produced from said interests and collected the proceeds therefrom, and applied said proceeds first to the payment of the proportionate part of operating expenses applicable to said interests and distributed the remainder to the owners of said interests each month. The Stantex Petroleum Co. acted in a like manner for the owners of the 87/640 undivided interests in the lease on the south half of the tract.

The owners of the respective 260/640 and 87/640 undivided interests transacted no business jointly except the operation of said leasehold estate. No other property was acquired by them, nor were the proceeds from the sale of oil and gas invested in any manner for the owners of said undivided interests.

In *Morrissey* v. *Commissioner*, 296 U. S. 344, and the companion cases [1] the Court discussed the circumstances under which an enterprise may be classified as an association taxable as a corporation. The Court did not establish an absolute test. It said that "The inclusion of associations with corporations implies resemblance; but it is resemblance and not identity."

---

[1] *Swanson* v. *Commissioner*, 296 U. S. 362; *Helvering* v. *Combs*, 296 U. S. 365; *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369.

There is little here disclosing resemblance of corporate form. The holders of undivided interests in the lease, as tenants in common, *F. E. McGlone*, 22 B. T. A. 358; affd., *Burnet* v. *Burns*, 63 Fed. (2d) 313; *Commissioner* v. *Duckwitz*, 68 Fed. (2d) 629; and *Commissioner* v. *Brouillard*, 70 Fed. (2d) 154; and *C. H. Clovis*, 32 B. T. A. 646, were in a limited and general way associated in a business enterprise for profit with provision for continuity of the venture and limitation of liability. Thus the terms of assignments of undivided interests in the lease by the Stantex Petroleum Co., the lessee of the entire tract of land, provided for drilling two wells, one on each half of the tract, at the assignor's expense; authorized the operation of the wells by the assignor, its successors and assigns, so long as it did so in an efficient manner, in case oil or gas was discovered in paying quantities; and permitted assignment of undivided interests. Aside from these elements, the agreements contain no features analogous to corporations. A paying well was drilled in each section, the production was sold, and the net proceeds were distributed monthly to the coowners of the property in accordance with provisions of the assignment. Title to the lease and the producing wells was at all times important in the original lessee and its assignees of interests therein as tenants in common. Exclusive of the amount collected for itself, such income as was derived from the wells was collected by the Stantex Petroleum Co. as agent or trustee for its cotenants. See *Commissioner* v. *Whitcomb Coca-Cola Syndicate*, 95 Fed. (2d) 596; *Mark L. Gerstle*, 33 B. T. A. 830; affd., 95 Fed. (2d) 857. While the coowners sought to limit their liability to the operation of wells containing oil and gas in paying quantities, they were severally liable for expenses of producing, saving, and marketing the output of the wells to the extent that the Stantex Petroleum Co. acted within its authority. Under the circumstances there was no limitation of liability similar to the stockholder of a corporation.

The respondent cites *Thrash Lease Trust*, 36 B. T. A. 444. Questions of the sort involved here must turn upon their peculiar facts. There we did not think the facts were sufficient to overcome the showing made in favor of the correctness of the Commissioner's finding. The facts here do not, in our opinion, warrant a finding that the petitioners were during the taxable periods associations taxable as corporations, and we so hold.

*Decision will be entered for the petitioners.*